## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BEST VALUE AUTO PARTS DISTRIBUTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-12291 |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| QUALITY COLLISION PARTS, INC., NATHIR HERMIZ, AND JOSE OJEDA, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants | ) | |

## COMPLAINT

Plaintiff Best Value Auto Parts Distributors, Inc., for its complaint against Defendants Quality Collision Parts, Inc., Nathir Hermiz, and Jose Ojeda, states the following:

### Summary

1.　This is an action for injunctive relief and damages arising out of Defendants' misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act of 2016 ("DTSA"), violation of the Michigan Uniform Trade Secrets Act ("MUTSA"), violation of the Computer Fraud and Abuse Act ("CFAA"), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, and civil conspiracy.

2.     While employed as general manager at Plaintiff Best Value Auto Parts Distributors, Inc. ("Best Value"), Defendant Jose Ojeda ("Ojeda") began a concerted effort to compete against Plaintiff for the benefit of his current full-time employer, Defendant Quality Collision Parts, Inc. ("Quality Collision"), a direct competitor of Best Value.

3.     Ojeda's actions included obtaining trade secret information and other protected information for the purpose of intentionally growing Quality Collision's business at the expense of and to the harm of Best Value.

4.     During his employment, Ojeda improperly obtained Best Value trade secrets and/or exceeded his authorization with respect to same and used and disclosed Best Value's trade secrets, diverted sales and customers to Quality Collision, and solicited Best Value employees to work for Quality Collision to the detriment of Best Value. Through these and other acts of deceit and unfair competition including but not limited to abusing his authority to increase pricing on Detroit-area Best Value customers, causing Best Value to be less competitive in the marketplace and to lose sales.

5.     During the year prior to his January 2019 resignation from Best Value, Ojeda requested and obtained certain trade secret and protected information including customer lists and information, customer pricing and vendor price lists

2

and other customer trade secret information described in this Complaint from Best Value under the guise that he was making an attempt to improve sales and operations for Best Value.

6.     Unbeknownst to Best Value, instead, Ojeda obtained this information and removed and copied additional trade secret and other confidential information from the computers and property of Best Value for the benefit of Quality Collision, one of its primary competitors in Michigan.

7.     Prior to and perpetuating after his resignation, Ojeda in conjunction with Quality Collision and Nathir Hermiz ("Hermiz") began an insidious campaign of stealing Best Value customers and soliciting current employees of Best Value.

8.     Upon information and belief, prior to and perpetuating after his resignation, Ojeda in conjunction with Quality Collision and Hermiz utilized Best Value's trade secrets and took actions with the intent and result of diverting Best Value customers to Defendants Quality Collision as set forth below.

9.     Best Value gave pricing preference to customers based upon the "level" that each individual customer was assigned based upon past purchase performance.

10.     Defendant Ojeda's misconduct while employed by Best Value included and resulted in the following matters: (a) by removing the individual

"levels" attributed to each and all the select customers for Best Value, caused Best Value's pricing to be less competitive relative to its competitors, primarily Quality Collision; and (b) reduced the protected pricing components which allowed Ojeda to understand Best Value's pricing and set a standardized pricing schedule to allow Quality Collision to unfairly compete with Best Value using Best Value's trade secrets.

11.     Without understanding the "level" pricing and "base line" pricing Ojeda obtained by deceit during his employment, he and his future employer could not effectively destroy Best Value in the marketplace.

## Parties

12.     Plaintiff Best Value Auto Parts Distributors, Inc. is a corporation organized under the State of Michigan with its principal place of business in Grand Rapids.

13.     Defendant Quality Collision Parts, Inc. is and was, at all times relevant herein, a corporation organized under the laws of the State of Michigan, with its principal place of business located at 5600 E. Nine Mile Rd. in Warren, Michigan.

14.     Upon information and belief, Defendant Nathir Hermiz is an individual and citizen of the State of Michigan, and is a shareholder and President of Quality Collision.

15.     Defendant Jose Ojeda is an individual who maintains his main residence at 1848 Godfrey Avenue, Wyoming, Michigan 49509. Ojeda was the General Manager of the Best Value facility located in Grand Rapids, Michigan and had worked at Best Value in that capacity for approximately fourteen years and been employed with Best Value for the same time.

16.     On information and belief, Best Value alleges that Ojeda, Quality Collision, and Hermiz acted as alleged in this Complaint jointly and for common purpose; that the acts alleged in the Complaint were in furtherance of a conspiracy among the Defendants; and that all actions were taken pursuant to common design to injure Best Value.

17.     As a result of Defendants' actions, Best Value was damaged.

18.     Defendants' actions proximately caused Best Value's damages and injury.

## Jurisdiction and Venue

19.     Federal question jurisdiction is invoked under 28 U.S.C. §1331 on the basis that Best Value alleges violations of the Federal Defend Trade Secret Act of

5

2016, 18 U.S.C. §1831 et seq. (the "Act") and Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq*.

20.     Supplemental jurisdiction of this Court is invoked over all other claims that do not arise under federal statute, in that these claims are so related to the federal claim upon which this Court's original jurisdiction is based pursuant to 28 U.S.C. §1367.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

22.     The court has personal jurisdiction over Defendants.

### Facts

23.     Best Value provides discount auto body collision parts in and throughout the State of Michigan including, but not limited to, Grand Rapids, Detroit, and Warren, Michigan.

24.     Best Value further ships, sells, advertises, and distributes its products and services over state lines and into the stream of commerce nationally and internationally.

25.     Its primary business is the import and then resale to retail repair shops, car dealerships, and individuals of new aftermarket parts that includes

replacements for automotive lighting, hoods, fenders, bumper covers, and other collision parts.

26.    Best Value sells such auto body collision parts via drivers/salesmen, inside sales personnel, and internet and telephone orders.

27.    Best Value's owners and IT management are located in Chicago, Illinois. Ojeda reported directly to Best Value's owner.

28.    In conjunction with its operations in Grand Rapids, Michigan, Best Value owns and utilizes a proprietary management software program. This software, a trade secret in and of itself, was used to maintain, collect and store its trade secret and confidential information.

29.    The trade secret confidential information on the software included but was not limited to:

      a.   Customer Lists including, but not limited to, customer name, address and contact information;

      b.   Previous and current orders by each Customer;

      c.   Vendor contact information;

      d.   Vendor pricing information;

      e.   Pricing for various auto body collision parts;

      f.   Costs of products;

g. Currently offered products;

h. Assigned customer levels; and

i. Sales by month and year to date.

30. Best Value maintains passwords on each and every computer and requires a password in order to log into the software which is unavailable to the public or even most of its own employees.

31. Under Best Value policies and practice, access to the confidential information described in Paragraph 26 (the "Best Value Trade Secrets") is secured by confidential passwords and was limited to only 5 persons, including the owner and the IT manager.

32. Quality Collision is a direct competitor of Best Value in the Grand Rapids, Detroit and Warren, Michigan areas as it sells aftermarket auto body collision parts to repair shops, car dealerships and individuals.

33. Upon information and belief, Hermiz is the primary shareholder, officer, and director of Quality Collision.

34. Ojeda was the General Manager of Best Value in Grand Rapids from in or around 2004 until January 25, 2019, when he resigned.

35. In his capacity of General Manager, Ojeda reported directly to the owner of Best Value located in Chicago, Illinois, was the highest ranking manager

in Michigan, was responsible for overseeing and directing the daily operations at Best Value, setting and adjusting pricing and discounts with customers, and representing Best Value in Michigan in dealings with customers and suppliers.

36.     When Ojeda announced his upcoming resignation, he stated he was resigning because he was "moving to San Antonio, Texas." Contrary to his representation, Ojeda resigned in order to become a full-time key management employee at Quality Collision.

37.     During the last year of his employment, Defendant removed from Best Value without authorization or permission various auto parts that constituted Best Value inventory and thereafter sold such inventory for his own personal benefit or retained it.

38.     Upon information and belief, Ojeda is now a full-time key employee at Quality Collision and in a leadership position with Quality Collision.

39.     While he did not resign employment with Best Value until January 2019, Ojeda began to perform work for Defendant Quality Collison no later than June 2018 and likely beforehand and hid this information from Best Value and its managers and owners.

40.     Without limitation, Ojeda as the key employee of Best Value in Michigan was responsible for management of all of the sales, warehouse, delivery,

personnel, accounting, and administrative activities for this Best Value location and had complete "bottom-line" responsibilities for the profit and losses of Best Value and determined and negotiated pricing and discounts with Best Value's customers in Michigan, acting on behalf of Best Value as its agent and highest ranking employee in Michigan.

41.     Upon information and belief, during the year prior to his resignation, Ojeda met and/or communicated on numerous occasions with Hermiz and Quality Collision personnel.

42.     On information and belief, Best Value alleges that such meetings and communications concerned Ojeda's future full-time employment at Quality Collision and plans to undermine Best Value including but not limited to encouraging some of Best Values employees to quit their jobs, diverting sales and customers away from Best Value by increasing Best Value's prices, decreasing the discounts Best Value offered to certain customers and sharing Best Value Trade Secrets with Quality Collision.

43.     Beginning no later than June 2018 and continuing thereafter, Defendant Ojeda began performing work for Defendants Quality Collision and Hermiz in matters that competed with his then-current employer, Best Value.

Defendant Ojeda failed to disclose his relationship with Defendants Quality Collision and Hermiz and intentionally hid this information for Best Value.

44.     During the period beginning no later than June 2018, Ojeda engaged in the actions described above in order to divert business from Best Value to Quality Collision while hiding from Best Value his relationship with Defendants Quality and Hermiz. During the period beginning no later than June 2018, Defendants Quality Collision and Hermiz knew that Ojeda was secretly performing work for Quality Collision and was engaging in actions to divert sales from Best Value to Quality Collision and otherwise harm Best Value to Quality Collision's benefit.

45.     Upon learning of the resignation of Ojeda, Best Value's Chicago management team traveled to the Grand Rapids location to oversee the transition of new personnel after the departure of Ojeda.

46.     To their dismay, they discovered that prior to his resignation Ojeda had:

> a. deleted information, software and files from his work station computer so that no one was able to access the computer;
>
> b. removed and/or destroyed trade secret and confidential information contained on the company's computer; and

c. removed and/or destroyed Best Value's files including, but not limited to, accounting and vendor files.

47.     Near or at the same time of discovering the unsavory acts of Ojeda, Best Value discovered that Quality Collision and Hermiz had provided Ojeda the opportunity to secretly perform work for Quality Collision while remaining employed by Best Value and using his trusted role with Best Value to divert business to Quality Collision, undermine Best Value's business and to otherwise compete with Best Value.

48.     On April 23, 2019, upon learning of Hermiz, Quality Collision, and Ojeda's conduct, Best Value sent cease-and-desist letters to Hermiz, Quality Collision, and Ojeda expressing that it believed they had inappropriately taken trade secret and confidential information and demanded that property of Best Value be returned.

49.     As of the date of this filing, Ojeda has continued to retain and utilize Best Value's trade secrets, confidential information and property.

**First Cause of Action**
**Misappropriation of Trade Secrets in Violation of 18 U.S.C. §1836(b)**
**(Against Ojeda)**

50.     Best Value restates and incorporates by reference all of the previous allegations as if fully set forth herein.

12

51.     Over the course of several years, Best Value has compiled and maintained a list of suppliers, vendors, and customers, including their name and contact information, as well as order history and pricing / margin information on a computer system that was accessible only upon request to Best Value headquarters in Chicago, Illinois or via a password that was issued by Best Value.

52.     In addition, Best Value maintained a list of vendor contact information, which included the vendor prices, on a computer system that was only accessible via a password that was issued by Best Value.

53.     Furthermore, only certain employees were allowed clearance or access to the trade secret and confidential information, particularly, Ojeda.

54.     In addition to some information being accessible on a computer system, Best Value kept its most important trade secrets on its main servers in Chicago which could only be accessed and disseminated by a small group of employees in the Chicago office.

55.     Such information is previously described above as Best Value Trade Secrets and was the result of the compiling of large amounts of information over a long period of time at substantial expense in money and time and provides Best Value with a competitive advantage in the industry.

56.    Best Value has taken reasonable measures to keep such information secret including but not providing such information only to a select few individuals, password protections, and other security measures.

57.    Best Value's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

58.    Such information, as aggregated over time and expensive effort, provides Best Value with a competitive advantage in being able to provide the most effective pricing and discounts to customers based on their usage, needs and volume.

59.    On information and belief, Best Value alleges that Ojeda misappropriated Best Value's trade secrets or exceeded his authority by downloading or improperly obtaining them, by improperly using and disclosing them, and by continuing to improperly use and disclose them, without Best Value's consent and authorization.

60.    Ojeda, as general manager and key employee for Best Value, breached his confidential relationship with Best Value by acting in a manner

inconsistent with Best Value's interest both during and following his employment with Best Value.

61.     Specifically, Ojeda had a duty to maintain the confidentiality of the supplier, customer and vendor lists, files, and the Best Value trade secrets and not to disclose such information to Best Value's competitors.

62.     Ojeda failed to abide by this duty by taking such protected information prior to his resignation and publishing it to the Defendants.

63.     Defendant Ojeda disclosed and used Best Value's trade secrets without Best Value's express or implied consent.

64.     Defendant Ojeda used improper means to acquire knowledge of the trade secrets as set forth herein.

65.     Defendant Ojeda with intent to misappropriate trade secrets that are related to a product or service used in or intended for use in interstate or foreign commerce to the economic benefit of Best Value, and intending and knowing that the offense will injure Best Value, did knowingly as alleged throughout the Complaint, the following:

      a. stole, or without authorization, removed by deception such information;

15

b. without authorization copied, duplicated downloaded, altered, destroyed, and delivered such information;

c. received and possessed such information knowing the same to have been obtained or converted without authorization; and

d. attempted to commit the offenses described in paragraphs (a) through (c).

66. By reason of this willful conduct, as alleged throughout the Complaint, Defendant Ojeda misappropriated Best Value's trade secrets.

67. Furthermore, Ojeda's continued employment by Quality Collision constitutes a threatened disclosure and misappropriation of trade secrets and/or confidential information.

68. Best Value has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial as a result of Defendants' threatened or actual misappropriation of Best Value's trade secrets and confidential information.

69. On information and belief, Best Value alleges that Defendant Ojeda acted willfully and maliciously.

70. Defendant Ojeda's misappropriation has caused Best Value to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm

and damages unless Defendants are enjoined from retaining and using such trade secrets and/or confidential information and from working for Quality Collision.

## Second Cause of Action

### Misappropriation of Trade Secrets in Violation of the Michigan Trade Secrets Act (Against Ojeda)

71.    Best Value restates and incorporates by reference all of the previous allegations as if fully set forth herein.

72.    Best Value owns valuable trade secrets that were disclosed to Ojeda in the course of his employment with the implicit understanding that this information was proprietary to Best Value.

73.    Ojeda knew or had reason to know that such trade secrets were confidential to Best Value.

74.    However, despite such knowledge, Ojeda improperly used for himself and disclosed such trade secrets without Best Value's express or implied consent.

75.    By reason of this willful conduct, Defendant Ojeda has misappropriated Best Value's trade secrets in violation of the MUTSA.

76.    Furthermore, Ojeda's continued employment by Quality Collision constitutes a threatened misappropriation of trade secrets and/or confidential information.

77.    Best Value has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial as a result of Defendant Ojeda's threatened or actual misappropriation of Best Value's trade secrets and confidential information.

78.    On information and belief, Best Value alleges that Defendant Ojeda acted willfully and maliciously and thus Best Value is entitled to exemplary damages and an award of attorneys' fees and costs pursuant to MUTSA, Michigan Compiled Laws § 445.1905.

79.    Defendant Ojeda's misappropriation has caused Best Value to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm and damages unless Defendant Ojeda is enjoined from retaining and using such trade secrets and/or confidential information and from working for Quality Collision.

### Third Cause of Action
### Computer Fraud and Abuse Act – Violation of 18 U.S.C. §1030 et seq
### (Against Ojeda)

80.    Best Value restates and incorporates by reference all the previous allegations as if fully set forth herein.

81.    All computers used by Ojeda to access Best Value's electronically stored information, and/or all computers used by Ojeda to access, impair or destroy

18

electronic information of Best Value, were at all relevant times computers used in interstate commerce and are protected pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §1030(e).

82.     Information stored on Best Value's computers is protected via various security measures, including passwords for each employee who is authorized to access the computer system and restricting access to information to only key employees in the company.

83.     Ojeda altered the password on his personal computer terminal and refused to provide such information to allow Best Value to gain access.

84.     Best Value was able to crack the computer password to Ojeda's computer and upon opening same determined that Ojeda had attempted to wipe the computer clean by deleting all icons, software and files located on the machine. Over a two day period, Best Value's IT management team was able to recover the data at a cost in excess of $5,000.00.

85.     Ojeda accessed and removed the software and its data from the computers of Best Value for the benefit of his current employer Quality Collision and thus exceeded their authorization to use the computers as such actions are adverse to Best Value.

86.     Ojeda accessed or received information from the secure computers of Best Value without authorization or exceeded his authorization and obtained information in violation of 18 U.S.C. §1030(a)(2)(c).

87.     Ojeda intentionally accessed Best Value's protected computers without authorization or exceeding Best Value's authorized access, and as a result caused damage and loss, in violation of 18 U.S.C. §1030(a)(5)(b); 18 U.S.C. §1030(a)(5)(c).

88.     Ojeda knowingly and with the intent to damage, intentionally deleted and destroyed information on the protected computers of Best Value, and as a result, caused damage and loss to the protected computers of Best Value in violation of 18 U.S.C. §1030(a) *et seq*.

89.     Due to the damage to the protected computers by Ojeda, Best Value incurred losses for addressing, responding and investigating the damage that was inflicted onto the computers. Such losses exceed $5,000 in a one-year period in violation of 18 U.S.C. §1030(g) and (c)(4)(A)(i)(I).

90.     Ojeda's blatant violation of the CFAA has caused Best Value to suffer and will cause it to continue to suffer, substantial, immediate and irreparable harm and damage unless the Defendants are enjoined from using any data including

trade secrets and/or confidential information and from working for Quality Collision.

### Fourth Cause of Action
### Breach of Fiduciary Duty
### (Against Ojeda)

91.    Best Value restates and incorporates by reference all the previous allegations as if fully set forth herein.

92.    Beginning no later than June 2018, Ojeda secretly and deceitfully began performing work for Defendant Quality Collision, utilized his energies, resources and standing and trust with Best Value to divert Best Value's business opportunities to Quality Collision and to harm and destroy Best Value's business for the benefit of Quality Collision and for his own benefit all while being employed and collecting a salary and other compensation from Best Value.

93.    As the highest-ranking employee of Best Value in Michigan and an agent of Best Value, Ojeda owed to Best Value the fiduciary duties of good faith, loyalty and fair dealing, which duties include not competing with Best Value, disclosing his relationship with Quality Collision to Best Value, not using managerial discretion to with the intent and effect to harm Best Value's business, not disclosing Best Value Trade Secrets to its competitor and using the trade

secrets for the benefit of Best Value's competitor and not working for the benefit of Best Value's competitors.

94.    As the General Manager, Ojeda was entrusted with protecting the best interests of Best Value and Best Value placed its trust and confidence in Ojeda and Ojeda was an agent of Best Value as alleged above.

95.    Prior to his resignation from Best Value while employed and being paid by Best Value, Ojeda breached his fiduciary duties to Best Value by performing work for Quality Collision on matters that compete with Best Value, diverting customers and sales away from Best Value and to Quality Collision and other tortious actions as alleged throughout the Complaint.

96.    Further, by assessing and damaging the Best Value computers, essentially interrupting the daily operations of Best Value, and failing to disclose such activities, Ojeda breached his fiduciary duties.

97.    Best Value has been injured by Ojeda's willful breaches of fiduciary duty in that the Best Value has lost customers and employees.

98.    Additionally, Best Value was deprived of the honest services of its employees.

99.    As a result of the actions by the Defendants, Best Value has lost business in an amount to be determined at trial.

22

100.   Ojeda's breach of fiduciary duties has caused Best Value to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm and damage unless Ojeda is enjoined from retaining and using Best Value's trade secrets and/or confidential information, soliciting employees and customers and from working for Best Value.

<u>**Fifth Cause of Action**</u>
<u>**Aiding and Abetting Breach of Fiduciary Duty**</u>
<u>**(Against Defendants Quality Collision and Hermiz)**</u>

101.   Best Value restates and incorporates by reference all the previous allegations as if fully set forth herein.

102.   Defendants Quality Collision and Hermiz knew from no later than June 2018 that Defendant Ojeda was breaching his fiduciary duty as alleged above and that his breaches of his fiduciary duties described above were wrongful and unlawful.

103.   Despite such knowledge, Defendants Quality Collision and Hermiz provided substantial assistance to Defendant Ojeda in breaching his fiduciary duties owed to Best Value which assistance included, but was not limited to, Defendants Quality Collision and Hermiz providing the opportunity to Ojeda to perform work for Quality Collision and providing Defendant Ojeda with sensitive

business information that assisted Ojeda in competing against Best Value to Quality Collision's benefit while he was employed with Best Value.

104.   Defendants Quality Collision's and Hermiz's actions in aiding and abetting Defendant Ojeda's breaches of his fiduciary duties to Best Value were intentional and willful.

105.   Defendants Quality Collision and Hermiz actions in aiding and abetting Defendant Ojeda's breaches of his fiduciary duties to Best Value caused Best Value to suffer damages including but not limited to lost profits, property, value of services and salary and benefits and unjustly enriched Defendants Quality Collision and Hermiz in the form of profits and other property and value.

<u>**Sixth Cause of Action**</u>
**Conversion**
**(Against Ojeda)**

106.   Best Value restates and incorporates by reference all the previous allegations as if fully set forth herein.

107.   Defendant Ojeda's actions alleged herein are violations of the common law of Michigan.

108.   Best Value has an absolute and unconditional right to the inventory, accounting files and other files as the inventory was purchased and owned by Best Value and the files were created, maintained and stored at Best Value.

109.   Ojeda wrongfully and without authorization assumed control over Best Value's tangible personal property.

110.   Upon learning of the removal of the files, Best Value sent a cease and desist letter to the Defendants specifically requesting that any personal property, including the files, be returned to Best Value.

111.   Due to the loss of the files an inventory, Best Value has been damaged in an amount to be determined at trial.

## Seventh Cause of Action
### Civil Conspiracy
### (Against All Defendants)

112.   Best Value restates and incorporates by reference all the previous allegations as if fully set forth herein.

113.   Defendants' actions alleged herein are violations of the common law of Michigan.

114.   On information and belief, Defendants intentionally and maliciously entered into an agreement for the sole purpose of dismantling the business of Best Value in order to benefit themselves individually and Hermiz and Quality Collision.

115.   Defendants began a deliberate campaign to redirect, steal and entice customers and employees away from Best Value. On information and belief,

Defendants made fallacious and untruthful statements in an attempt to pilfer sales and customers away from Best Value.

116.   Furthermore, Defendants, through Ojeda, caused to be destroyed and/or removed, software on the computers of Best Value in order to ensure that the daily operations of Best Value were interrupted or halted.

117.   Best Value has been and will continue to be injured by Defendants' civil conspiracy as Best Value has lost a substantial amount of business as of the Complaint and will continue to lose business due to the improper actions by the Defendants.

118.   Defendants' civil conspiracy has caused Best Value to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm unless Defendants are enjoined from disclosing and using Best Value's trade secrets and/or confidential information, from working for Quality Collision and from soliciting current employees at Best Value.

## **Damages Sought**

119.   Best Value sues to recover the actual damages caused by the Defendants.

120.   These damages include lost profits, both prospective and retrospective, loss of goodwill and the recovery of improper profits the Defendants

obtained from their theft and misuse of the trade secrets and confidential information and other unlawful conduct as alleged throughout this Complaint.

121.   These damages further include the salary, benefits, and other compensation paid to Defendant Ojeda during the period of his employment that he breached his fiduciary duties and include the expenses of investigating and repairing the computer damage caused by Defendants.

122.   Best Value sues to recover punitive damages as the Defendants' actions as described herein are willful and malicious.

123.   The Defendants had a calculated plan to steal trade secrets and confidential information and to use Defendant Ojeda's position of trust and discretion with Best Value to steal its property, destroy its customer relationships and in order to undermine the business of Best Value.

124.   Best Value sues to recover its attorneys' fees and other costs and expenses pursuant to the DTSA and MUTSA.

125.   Because Best Value may not have a complete and adequate remedy at law for actual damages due to the nature of the harm caused by Defendants, Best Value seeks the equitable remedy of unjust enrichment.

126.   Under the circumstances, equity and good conscience dictate that Best Value is entitled to recoup the financial compensation that measures that actual

loss attributed to the theft or profits acquired by Defendants as a result of the unlawful and tortious acts alleged in this Complaint

127.   Alternatively, because Best Value may lack an adequate remedy at law for actual damages done, and because Defendants are currently in possession of Best Value's trade secrets and using them to their advantage, Best Value requests that this Court grant Best Value a reasonable royalty on sales generated by Defendants, pursuant to 18 U.S.C. §1836(b)(3)(B).

128.   Best Value's initial investigation indicate that the damages sought are in excess of $3 million or in an amount to be proved at trial.

## Injunction Sought

129.   Best Value seeks a preliminary and ultimately a permanent injunction against the Defendants as the Defendants have caused Best Value to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm as the Defendants are attempting to destroy Best Value's business, using wrongfully obtained trade secret and confidential information, as well as soliciting employees and making defamatory statements concerning Best Value.

130.   Best Value does not have an adequate remedy at law for the injuries described above. The damages, specifically the loss of business due to the

defamatory statements as well as the damages associated with the stealing of trade secret and confidential information are difficult to measure.

131.  Best Value is likely to succeed on at least one of its claims against the Defendants.

132.  Moreover, the harm that would occur to Best Value if the preliminary injunction is not granted far outweighs any harm that may occur to the Defendants.

133.  Due to the nature of the actions committed by the Defendants, it would be in the best interest of the public to grant the preliminary and permanent injunction so as to deter other individuals from engaging in such egregious conduct.

WHEREFORE, Plaintiff requests that this Honorable Court grant judgment in its favor and against Defendants on each and every count alleged herein and award to Plaintiff all the relief sought herein, costs, and such further relief in Plaintiff's favor as is just and reasonable under the circumstances.

## **Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted by:

Dated: August 2, 2019           /s/ Maxwell Goss
                                Maxwell Goss
                                Maxwell Goss, PLLC
                                370 E. Maple Road, Third Floor

Birmingham, Michigan 48009
(248) 266-5879
max@maxwellgoss.com