UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BEST VALUE AUTO PARTS DISTRIBUTORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUALITY COLLISION PARTS, INC., *et al.*, <br><br> Defendants. | Case No. 19-cv-12291 <br> Honorable David M. Lawson <br> Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS QUALITY AND HERMEZ (ECF NO. 157)**

## I.   Introduction

Plaintiff Best Value Auto Parts Distributors, Inc., sues Quality Collision Parts, Inc.; Nathir Hermez; and Jose Ojeda, alleging that Ojeda misappropriated its confidential sales data in collusion with Quality and Hermez.  ECF No. 1.  Best Value asks the Court to enter sanctions against Quality and Hermez, including entry of a default judgment, because of their alleged serious discovery abuses.  ECF No. 157.  After more than two

years and repeated motions to compel, Best Value argues that defendants[1] have deliberately withheld evidence in violation of court orders compelling production.  ECF No. 157.  After an August 8, 2022, evidentiary hearing, forensic examination of Quality's hard drive, and post-hearing briefing, the Court **RECOMMENDS**[2] that Best Value's motion be **GRANTED**, that an order of default judgment be entered against Quality and Hermez, and that an evidentiary hearing be held to compute damages and award other relief.

## II.    Background

Best Value is a distributor of discount aftermarket automotive parts, and Ojeda was Best Value's general manager from 2004 to January 2019. ECF No. 1, PageID.6-8.  While employed by Best Value, Ojeda allegedly misappropriated confidential sales and customer data and shared it with Quality (his current employer) and Hermez (Quality's owner).  *Id.* at PageID.8-12.  Quality is one of Best Value's direct competitors in Michigan, and defendants allegedly sought to divert Best Value's sales and

---

[1] While Ojeda remains a party to the action, reference in this order to "defendants" includes only Quality and Hermez.

[2] The Honorable David M. Lawson referred the motion under 28 U.S.C. § 636(b)(1)(A) for hearing and determination, but because the Court recommends entry of a default judgment, it must prepare a report and recommendation under § 636(b)(1)(B).  *See Builders Insulation of Tenn., LLC v. S. Energy Solutions*, No. 17-cv-2668, 2020 WL 265297, at *4-5 (W.D. Tenn. Jan. 17, 2020) (collecting cases).

customers to Quality. *Id.* Best Value sues for misappropriation of trade secrets, violations of the Computer Fraud and Abuse Act, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, and civil conspiracy. *Id.* at PageID.12-26.

In early 2020, Best Value served discovery requests for Quality's monthly financial, sales, and customer records from 2014 to 2019. ECF No. 157-2, ECF No. 157-3; ECF No. 157-4. Defendants failed to respond, and Best Value moved to compel production of those business records. ECF No. 29; ECF No. 32. In July 2020, after defendants stipulated to produce certain records, Magistrate Judge R. Steven Whalen granted Best Value's motions and ordered defendants to produce the requested discovery within 14 days. ECF No. 45; ECF No. 53.

Quality produced a spreadsheet summarizing annual (rather than monthly) sales data for 2018 to 2019 but produced no data for 2015 to 2017. ECF No. 133, PageID.4973. The parties stipulated to an order acknowledging the deficiency and requiring defendants to produce the records by September 2020. ECF No. 61. But defendants again failed to produce the records and then made conflicting statements about the records' existence, prompting Best Value to move for sanctions and a forensic examination of Quality's COBOL-based computer system storing

3

the business records.  ECF No. 90, PageID.3301.  Judge Whalen granted the motion in part and ordered a limited forensic examination of the COBOL computer by court-appointed expert R. Stott Matthews.  ECF No. 113.  Matthews reported that the COBOL computer contained no data for 2015 or 2016 and incomplete data for 2017 to 2019.  ECF No. 157-7, PageID.5512.

In September 2021, after this case was reassigned to the undersigned, Best Value again moved to compel production of the business records.  ECF No. 133.  This Court declined to reopen discovery but permitted Best Value to serve interrogatories about the data's location.  ECF No. 145, PageID.5317-5319, 5322-5326.  In response to the interrogatories, defendants stated:

> All of our company sales data, including customer information, sales invoices, all sales transaction [sic], and other similar data which is generated, used-by, or otherwise stored is done so in the one computer which was subject to the forensic examination.  Other computers, such as our POS units connect to this main computer.  This computer has never been wiped cleaned, re-formatted, or otherwise erased.  To our knowledge, the computer has never been backed-up.

ECF No. 157-9.  Defense counsel certified under Rule 26(g) that the responses were made after a reasonable inquiry.  ECF No. 157-10.  Since defendants maintained that they produced all records in their possession,

the Court denied Best Value's motion to compel but permitted it to re-interview Matthews and move for sanctions. ECF No. 147.

Best Value now moves for sanctions. ECF No. 157. The Court held an evidentiary hearing, and Best Value presented testimony from financial expert Jeffrey T. Bagalis, Hermez, and Matthews. After the hearing, the Court ordered Matthews to perform another forensic examination of the COBOL computer's hard drive "to evaluate whether data has been deleted, overwritten, or otherwise tampered with and whether any data originated from another source." ECF No. 165. Matthews shared his updated report with the Court and the parties, and the parties filed supplemental briefing. ECF No. 167; ECF No. 171; ECF No. 174.

### III. Analysis

#### A.

A district court may sanction parties with entry of default judgment for discovery abuses under Federal Rule of Civil Procedure 37. *KCI USA, Inc. v. Healthcare Essentials, Inc.,* 801 F. App'x 928, 933 (6th Cir. 2020). Courts consider four factors in this analysis:

> 1) whether the disobedient party acted in willful bad faith;
> 2) whether the opposing party suffered prejudice;
> 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and
> 4) whether less drastic sanctions were imposed or considered.

5

*Id.* at 934. Although no one factor is dispositive, bad faith is the preeminent consideration. *Id.; Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008); *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Default judgment is proper against a defendant who has engaged in contumacious conduct, perverse resistance of authority, or stubborn disobedience. *Schafer*, 529 F.3d at 737.

Default judgment as a sanction for discovery abuse is warranted when "no alternative sanction would protect the integrity of the pre-trial procedures." *Buck v. U.S. Dep't of Agriculture, Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992); *see also State Farm Mut. Auto. Ins. Co. v. Max Rehab Physical Therapy, LLC*, No. 18-13257, 2021 WL 2843832, at *5 (E.D. Mich. June 28, 2021), *adopted*, 2021 WL 3930133 (E.D. Mich. Sept. 2, 2021) (recommending default judgment after warnings and lesser sanctions failed to spur compliance with discovery orders). Although entry of default judgment is a drastic measure, the district court does not abuse its discretion in entering a default judgment to punish a party for "egregious conduct and to deter other litigants who might be tempted to make a mockery of the discovery process." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008).

6

Applying the factors described in *KCI*, the Court finds that a default judgment should be entered against defendants.

**1.**

As noted, the most important consideration is whether defendants "acted in willful bad faith." *KCI*, 801 F. App'x at 934. Courts find willful bad faith when the party "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer*, 529 F.3d at 737.

Defendants violated court orders to produce "the requested financial information in the format in which it is kept in the ordinary course of business." ECF No. 53; *see also* ECF No. 45; ECF No. 61. Defendants have produced no business records except Quality's annual sales summary for 2018 to 2019. Defendants have insisted that "[a]ll of our company sales data" is stored "in the one computer which was subject to the forensic examination," and that the computer has "never been wiped cleaned, re-formatted, or otherwise erased." ECF No. 157-9, PageID.5526-5527. During the evidentiary hearing, Hermez reiterated that Quality's business data has always been stored on the COBOL computer and is not stored on any other system. ECF No. 166, PageID.5687-5690, 5722. Yet during his forensic examination of the COBOL computer, Matthews found

no data for 2015 to 2016 and minimal raw data for 2017 to 2019. *Id.* at PageID.5748, 5752-5756; ECF No. 157-7, PageID.5512. Nor did he find the sales summary for 2018 to 2019. ECF No. 157-8, PageID.5517-5518; ECF No. 166, PageID.5749.

The record suggests that data exists on devices other than the COBOL computer that defendants produced. Based on his experience with businesses like Quality, Bagalis believed that defendants would have created contemporaneous sales records with invoice details on a "customer-by-customer basis." ECF No. 157-1, PageID.5466; ECF No. 166, PageID.5623, 5660-5662. He explained:

> [F]or example, vendor reconciliations, invoicing activity, sales tax reporting, a variety of things require documentation on a more granular basis than just annually. And so any customer, you know, may need an account statement. Any customer may need to reconcile what was shipped, not shipped, down to vendor statements and payments. I find that in any of my cases where we're looking at that type of sales activity, that that information typically exists because it's necessary in order to do the proper reporting within the industry that the companies operate.

ECF No. 166, PageID.5660-5662.

Matthews also said that he would have expected to find far more data than he did if the COBOL computer was Quality's central system, meaning the data was likely stored elsewhere. ECF No. 157-8, PageID.5523 (opining that the COBOL computer may "pull[] data from another location");

8

ECF No. 166, PageID.5755-5756.  His second examination of the COBOL computer confirmed his suspicions.  Matthews determined that the COBOL computer connects to a local area network (LAN) that is "almost certainly present on a server at [Quality]."  ECF No. 168-27, PageID.5992-5993, 5998.

The COBOL computer connects to the LAN through a network-based "Z-drive" that contains files with names like "Invoices Paid" and "Carparts."  *Id.* at PageID.5992-5993.  The COBOL computer is synced with the LAN server such that any activity or content on the computer is replicated on the server.  *Id.* at PageID.5994; ECF No. 168-30, PageID.6087-6092.  Using a clone he created of the COBOL computer, Matthews tried to open a file through AGQ, the COBOL-based application used to manage Quality's sales data and generate reports.  ECF No. 157-7; ECF No. 168-27, PageID.5991, 5995.  The application tried to copy a file from the Z-drive but could not connect to that resource.  ECF No. 168-27, PageID.5995.  Matthews concluded that the "results clearly evidence the critical role that the network resource, 'Z:' drive played in the execution of the AGQ application," and that the Z-drive holds potentially responsive data.  *Id.* at PageID.5995, 5998.

Matthews also found that the COBOL computer accessed information from "at least three USB-storage devices" containing potentially responsive files named "Parts prices," "Price Update Daily," and "Sept 2020 Sales." *Id.* at PageID.5996-5997. And contrary to defendants' claim that the COBOL computer had never been "wiped clean," Matthews found that all data was overwritten when the Windows operating system was reinstalled in July 2017. *Id.* at PageID.5998. While defendants claim that the loss of this data was inadvertent, they still did not produce any records created after July 2017. *See* ECF No. 171, PageID.6408. And Matthews noted that AGQ was not installed on the COBOL computer until October 2017, and that no artifacts showed use of AGQ on the COBOL computer before July 2017. *Id.* at PageID.5991-5992, 5998; ECF No. 168-30, PageID.6066. Thus, any use of AGQ before October 2017 must have occurred on another computer. ECF No. 168-27, PageID.5992.

This evidence shows that defendants have stubbornly and deceitfully withheld responsive information for two years, in violation of court rules and orders. In July 2020, defendants agreed to produce the requested records. ECF No. 45; ECF No. 61. Changing tack in October 2020, defendants claimed the records did not exist—contrary to Hermez's testimony that the data was stored on the COBOL computer. ECF No. 90, PageID.3318-

3320; ECF No. 90-9; ECF No. 90-11, PageID.3392-3393; ECF No. 90-14. When Matthews's forensic examination did not turn up any responsive data, defendants doubled down on their claim that all business data was stored on the COBOL computer. ECF No. 157-9. But that claim is not credible given the evidence from Bagalis and Matthews.

Defendants' response that they lack the sophistication to understand their computer system also lacks credibility. *See* ECF No. 171, PageID.6400-6401. During the evidentiary hearing, Hermez denied ever using the COBOL computer, explaining that he has "nothing to do" with business operations and has not been "running the show" at Quality. ECF No. 166, PageID.5667-5668, 5690, 5695. But Hermez testified during his deposition that he was involved in business operations and that "[f]inal decision[s] in the company…belong to [him]." ECF No. 170-2, PageID.6358-6359, 6366. And Hermez testified that he used the COBOL computer to enter price changes. ECF No. 170-3, PageID.6377. Hermez's testimony during the evidentiary hearing also conflicts with his designation as Quality's corporate representative to testify about Quality's operations. ECF No. 157-5; ECF No. 166, PageID.5720. Hermez's new denial of knowledge or responsibility for Quality's data entry and business operations

11

is simply a brazen and transparent attempt to escape consequences for violating the discovery rules and court orders.

Even if defendants did not know how their financial data was stored, they had to make a reasonable inquiry. Fed. R. Civ. P. 26(g); *McGuire v. Metro. Life Ins. Co.*, No. 12-cv-10797, 2015 WL 1757312, at *7 (E.D. Mich. Apr. 17, 2015). Defense counsel certified that defendants' responses to the interrogatories about the location of business data were made after discussing the matter with Quality's accountants and IT professionals and after "working with [the] office manager to ensure that all potential relevant electronic data sources and physical files and evidence in the possession, custody, or control of [defendants] were carefully searched." ECF No. 157-10. But Hermez stated during the evidentiary hearing that no one did anything of the sort:

> Q. Okay. Let me ask my question again. It's just a yes or no question. Before signing off on these interrogatory responses in Exhibit 8, did you instruct anyone to look at the [COBOL] computer and to see if the 2015 through 2017 data was on it?
> A. No.
> Q. Are you aware of anyone who looked at the computer to see if the 2015 through 2017 data was on it prior to you signing this – these interrogatory responses?
> A. No.

ECF No. 166, PageID.5720. Thus, if defendants lacked knowledge of how their data was stored, they violated Rule 26(g) by responding to the

12

interrogatories without taking the most basic steps to verify that their answers were accurate. Defendants have also shown a blatant disregard for other discovery obligations. For example, Hermez did nothing to ensure the preservation of evidence, despite Best Value's demand letter. ECF No. 166, PageID.5714-5715; ECF No. 168-18.

Best Value and this Court have given defendants every opportunity to comply with the discovery orders, but their response has remained dismissive, cavalier, and likely intentionally obstructive. Defendants' failure to identify, preserve, and search devices storing the requested business records is glaring evidence of their willful defiance with court-ordered discovery, satisfying the first prong of the default judgment analysis. *See KCI,* 801 F. App'x at 935 (finding that defendant's failure to turn over electronic devices supported willful bad faith); *State Farm*, 2021 WL 2843832, at *3-4 (finding that defendants acted in bad faith by falsely denying that they stored responsive information in phones or computers and falsely stating that they produced all responsive information).

Tellingly, defendants do not address Matthews's findings from his second forensic examination of the COBOL computer. Instead, they argue that Best Value cannot show they acted in bad faith because Matthews found no evidence that defendants deleted any data. ECF No. 171,

13

PageID.6401-6402.  While Matthews testified at the hearing that he encountered no evidence of deleted data during his first examination, his second examination revealed that the files on the COBOL computer were overwritten when Windows was reinstalled.  ECF No. 166, PageID.5756-5757; ECF No. 168-27, PageID.5998.  But that is beside the point.  No matter if defendants deleted data, the evidence shows that they withheld responsive information.

Defendants also argue that "Mr. Matthews uncovered data that he himself stated satisfied the discovery requests."  ECF No. 171, PageID.6401.  Since defendants fail to develop this argument by identifying what data Matthews uncovered or describing how it satisfied their discovery obligations, the Court declines to address this argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones." (internal quotation marks omitted)).

**2.**

The prejudice factor also favors the entry of default judgment. "A party is prejudiced when it is unable to secure the information requested and required to waste time, money, and effort in pursuit of cooperation which the opposing party was legally obligated to provide." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 485 (6th Cir. 2015) (internal quotation marks omitted). After more than two years of Best Value's diligent efforts and court orders to produce the requested documents, defendants produced only one annual sales summary for 2018 to 2019 and no records for 2015 to 2017.

Defendants' failure to produce Quality's sales or financial data for 2015 to 2017 or its daily or monthly data for 2018 to 2019 has hindered Best Value's ability to evaluate or prove causation and damages. From the limited information provided, Bagalis observed a spike in Quality's 2019 sales to many customers and a corresponding decrease in Best Value's sales to the same customers. ECF No. 166, PageID.5627-5629. But without the missing data, Bagalis could not accurately measure the economic impact of defendants' alleged actions on Best Value's sales and revenues. *Id.* at PageID.5623, 5656. He could not adequately evaluate Quality's sales performance before and after the alleged misappropriation.

*Id.* at PageID.5631, 5634-5637. While Bagalis estimated Best Value's damages to be about $755,000.00, he testified that the figure would likely be higher if he had the requested information. *Id.* at PageID.5638-5639, 5641, 5657.

Defendants do not address prejudice. They instead re-argue the bad-faith factor and assert that Best Value has not shown that its case has merit. ECF No. 161, PageID.5580-5583; ECF No. 6402-6404. But as stated, the Court finds that defendants have acted in bad faith. And whether a case has merit is irrelevant to whether default judgment is an appropriate sanction. *KCI*, 801 F. App'x at 934. Any evaluation of the merits would be improper since defendants' obstruction has prevented Best Value from securing needed evidence. "'[I]n cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case,'" default is the appropriate sanction. *Id.* at 935 (quoting *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008)).

**3.**

The third factor addresses whether the Court warned defendants that failure to cooperate could lead to a default judgment. Although an earlier warning is relevant, it is not required when there is evidence of bad faith or contumacious conduct. *Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 368

16

(6th Cir. 1997); *State Farm*, 2021 WL 2843832, at *5. For the reasons stated, the Court finds that defendants engaged in bad faith and contumacious conduct.

And defendants *were* warned that their disobedience could prompt a default judgment against them. During a January 2022 motion hearing and in a subsequent order, the Court authorized Best Value to move for sanctions under Rule 37 if it could prove that defendants violated the rules of discovery or court orders. ECF No. 147; ECF No. 149, PageID.5390. One sanction under that rule allows a court to enter a default judgment against a party who disobeys a discovery order. Rule 37(b)(2)(A)(vi). Thus, "[n]otice is satisfied." See *KCI*, 801 F. App'x at 936.

**4.**

The last factor—whether lesser sanctions have been imposed or considered—supports granting Best Value's motion for default judgment. In December 2020, Judge Whalen partially granted Best Value's motion for sanctions and ordered the parties to split the cost of Matthews's forensic examination. ECF No. 115. And it is too late for lesser sanctions to remedy the prejudice to Best Value; discovery is closed, and the case is scheduled for trial in less than a month from now. ECF No. 155. Thus,

default judgment is the only sanction that "would protect the integrity of the pre-trial procedures." *See Buck,* 960 F.2d at 608.

## IV. Conclusion

The Court **RECOMMENDS** that Best Value's motion for default judgment (ECF No. 157) be **GRANTED**. The amount of the damages and other relief should be determined in a separate hearing.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 22, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 22, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
