UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEST VALUE AUTO PARTS
DISTRIBUTORS, INC.,

                     Plaintiff,                       Case Number 19-12291

v.                                          Honorable David M. Lawson

                                          Magistrate Judge Elizabeth A. Stafford

QUALITY COLLISION PARTS, INC.,
NATHIR HERMEZ, and JOSE OJEDA,

                     Defendants,

_____/

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING DEFENDANT'S OBJECTIONS, GRANTING PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS, AND GRANTING DEFAULT JUDGMENT

Plaintiff Best Value Auto Parts Distributors, Inc., filed a complaint more than three years ago alleging that defendant Jose Ojeda left his employment with the plaintiff and joined with defendants Quality Collison Parts, Inc., and Nathir Hermez to misappropriate its confidential sales data. For more than two years, the plaintiff has attempted to obtain Quality Collison's customer sales information to demonstrate a spike in Quality Collision's sales to Best Value's former customers that corresponded with a decline in the plaintiff's sales to those customers. When these defendants did not respond adequately to the discovery requests, Best Value sought assistance from the Court, filing six discovery motions, including the instant motion for sanctions, which was referred to Magistrate Judge Elizabeth A. Stafford for determination. Judge Stafford filed a report on September 22, 2022 in which she found that defendants Quality Collison and Hermez intentionally obstructed the plaintiff's discovery efforts and engaged in willful bad faith. She recommended that a default judgment be entered against these defendants. Defendants Quality Collison and Hermez filed timely objections to the report and recommendation, and the matter is before the Court for fresh review. For the reasons stated below, the Court will overrule the

defendants' objections, adopt the recommendation, grant the plaintiff's motions for sanctions, and enter default judgment against defendants Quality Collison and Hermez on liability.

## I. Facts

Plaintiff Best Value and defendant Quality Collision compete with each other in the distribution of aftermarket automotive parts.  Defendant Jose Ojeda worked as Best Value's general manager from 2004 until January 2019, when he resigned and joined Quality Collision. Best Value alleges in its complaint that, starting in late 2017, Ojeda secretly worked with Quality Collision and its owner, Nathir Hermez, to divert Best Value's sales and customers to Quality Collision.  It accuses Ojeda of taking to Quality Collision a list of nearly ten thousand of Best Value's Michigan customers, many of which Ojeda called on after joining Quality Collision.  It also says that, before leaving Best Value, Ojeda removed from Best Value's propriety pricing system the discount levels assigned to certain customers to make it easier for Quality Collision to undercut prices, and he worked with Quality Collision and Hermez to scout commercial warehouse space Quality Collision could use to compete with Best Value.  Best Value contends that as a result of that underhanded activity, it lost substantial revenue, as certain customers made fewer purchases from Best Value while significantly increasing their purchases from Quality Collision.

On August 2, 2019, Best Value filed a complaint pleading claims of misappropriation of trade secrets in violation of the Defend Trade Secret Act, 18 U.S.C. § 1836, and Michigan Trade Secrets Act, Mich. Comp. Laws § 445.1905; improper access to electronic information in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; breach of fiduciary duties; and civil conspiracy.  That set the stage for the discovery disputes that followed.

### A. Best Value's First and Second Discovery Motions

On October 7, 2019 and February 14, 2020, Best Value served the defendants its First and Second Sets of Interrogatories and Requests for Production seeking among other things "records

showing all sales by Quality Collison, including customer name and location, product and number of units sold, and sale price, from January 1, 2014" to 2019, and "all monthly revenues and profits" accrued during the same period.  *See* Pl.'s 1st Produc. Request, ¶ 6, ECF No. 29-3, PageID.375; Pl.'s 1st Interrog., ¶ 9, ECF No. 29-4, PageID.391; Pl.'s 2d Produc. Request, ¶¶ 1-3, ECF No. 29-6, PageID.403.  Best Value maintains that it needs access to Quality Collision's customer sales data before 2017 — when Ojeda allegedly began colluding with Quality Collision — so that it can compare the companies' sales before and after the collusion began and determine whether and to what extent the defendants profited at Best Value's expense.

Quality Collision and Hermez responded to the second production request five weeks late. Although they objected that the demand for sales data was overly broad and unduly burdensome and noted that "Quality Collison does not maintain records of the type and scope requested," the defendants indicated that the company was gathering and would produce the sales records it had maintained for 2018 and 2019.  It did not do so.  Nor did the defendants produce any other responsive documents, except for 30 pages of text messages.  That prompted Best Value to file its first motion to compel discovery on June 4, 2020, seeking complete answers to its interrogatories and requesting that Quality Collison and Hermez be required to produce all responsive materials in their possession, custody, or control.  The Court referred the motion to the assigned magistrate judge, Judge R. Steven Whalen.  Judge Whalen brought the parties together on some of the discovery issues and memorialized the accord in a stipulated order on July 1, 2020, which resolved the motion in part.  Discovery Order, ECF No. 45.  That order directed Quality Collison to produce its 2018 and 2019 sales records to Best Value by July 2, 2020.  However, the defendants failed to produce the records by that deadline.

In the meantime, Best Value served its Third Set of Interrogatories and Request for Production seeking information about Quality Collison's finances and customers on a monthly basis — including parts sold, sale prices, and dates of sale — for each month between 2015 and 2019, all to be produced by June 1, 2020.  When Quality Collison and Hermez failed to respond by the deadline, Best Value filed its second motion to compel discovery.

On July 16, 2020, Judge Whalen held a hearing on Best Value's two discovery motions. Noting that the parties indicated that they had resolved several discovery disputes before the hearing, Judge Whalen nevertheless granted both motions and ordered Quality Collison and Hermez to "produce the requested discovery, including the requests that have been resolved, including . . . the requested financial information in the format in which it is kept in the ordinary course of business" within 14 days.  Order Granting 1st and 2d Mots. to Compel, ECF No. 53, PageID.865.

On August 6, 2020, Quality Collison served responses to the plaintiff's Third Set of Interrogatories and Request for Production.  Responding to the demand for monthly sales data from 2015-2019, Quality Collison stated that it provided the requested information already "for the dates between 2017-2019, to the extent the information is available, and in the manner ordinarily held in the course of its business operations."  Defs.' Resp. to 3d Produc. Demand, ¶ 1, ECF No. 168-7, PageID.5873.

Also on August 6, 2020 — a week after Judge Whalen's July 30, 2020 deadline, and ten months after Best Value's first production request — Quality Collison and Hermez finally produced a spreadsheet in hard copy format containing sales information for 2018-2019.  The spreadsheet contained 344,000 rows of annualized data from 2018 and 2019 only.  Acknowledging that they "ha[d] not yet produced all documents required by the July 17, 2020 order of Magistrate

Judge Whalen," Quality Collison and Hermez then stipulated to produce by September 3, 2020 "all requested financial documents for 2015 and 2017" and to produce the 2018-2019 records in electronic format.  Discovery Stip., ¶ 4, ECF No. 61, PageID.881; Order Modifying Discovery Sched., ECF No. 62, PageID.884.  Yet again, however, the defendants failed to comply with the stipulated discovery order.

### B.  Best Value's Third and Fourth Discovery Motions

Despite missing the September 3, 2020 discovery deadline, counsel for Quality Collison and Hermez indicated that the defendants had "the majority of the documents ready for production" on September 15, 2020, including "all requested financial documents for 2015 through 2017." Sept. 2020 Emails, ECF No. 90-6, PageID.3368-74.  But the documents Quality Collison and Hermez actually produced on that date consisted only of brief handwritten notes listing certain topline monthly sales, and sales, use, and tax withholding data for 2015-2017.  Plaintiff's counsel informed defense counsel that the documents were "very limited and basic," and did not include any sales, revenue, and parts information similar to the data the defendants had supplied in the 2018-2019 spreadsheet.  Nor did they include the promised electronic version of the spreadsheet. Defense counsel responded that the documents are "the extent of what the client has in the ordinary course of business" for 2015-2017 and that Quality Collision "does not store files electronically" and therefore is unable to provide the 2018-2019 data in an electronic form.  Oct. 2020 Emails, ECF No. 90-9, PageID.3381-82.  Relying on defense counsel's representation, plaintiff's counsel agreed to continue with a Rule 30(b)(6) deposition of Hermez as Quality Collision's corporate representative, which the parties had adjourned pending Quality Collision's compliance with Judge Whalen's discovery orders, including the production of the 2015-2017 sales data.  The parties resumed the deposition on October 6, 2020.

Hermez testified during his depositions that he is the only owner of Quality Collision and supervises all employees, and that only he, his brother, and his nephew use Quality Collision's COBOL computer. He averred that Quality Collision's 2015-2017 invoices "should be" contained in the computer system, including the same information Quality Collision produced in the 2018-2019 spreadsheet. He also testified that the 2018-2019 spreadsheet had been generated from invoices stored on the COBOL computer, which is capable of generating prior invoices for any given customer. Otherwise, Hermez was combative and unprepared for the deposition. Although neither he nor Quality Collision objected to any of the plaintiff's deposition notices, he testified that he "never heard about" the deposition and did not "know what it is even," and only prepared for 15 minutes before continuing his testimony. Hermez Aug. 2020 dep., ECF No. 98-1, PageID.3804, 3809. Perhaps for that reason, Hermez was unable to answer basic questions about Quality Collision's business operations and finances, professing ignorance as to the preparation of Quality Collision's financial statements, establishment of its financial targets, operation of its invoice and computer system, territories and customers, hiring and firing, employee salaries, and the employment relationship with Ojeda.

Following the deposition, plaintiff's counsel renewed his demand for production of the relevant 2015-2017 data. In response, defense counsel produced the same notes that Quality Collision had produced already and maintained that, despite Hermez's testimony to the contrary, Quality Collision did not have the 2015-2017 sales data Best Value was demanding. Defense counsel represented that Quality Collision's accountant prepared the 2018-2019 customer sales spreadsheets but did not prepare — and did not have access to the data necessary to prepare — similar spreadsheets for 2015-2017.

On November 16, 2020, Best Value filed a motion for sanctions against Quality Collision and Hermez, requesting that the defendants be compelled to submit to and pay for a forensic examination of Quality Collision's computer system.   1st Mot. for Sanctions, ECF No. 90, PageID.3299.   The request was limited to (1) locating and producing Quality Collision's 2015-2017 customer sales information; (2) determining whether any responsive data had been deleted from Quality Collision's computer system; and (3) determining whether Quality Collision could produce 2018-2019 customer sales information by month.   The plaintiff also asked for attorney's fees and expenses for the costs it had incurred in attempting to compel the discovery.   A week later, Best Value also filed its third motion to compel, seeking an order compelling Quality Collision to produce a corporate representative prepared and competent to testify and award Best Value the attorney's fees and costs it incurred conducting Hermez's prior deposition and filing the motion for sanctions.

Judge Whalen held a hearing on the two discovery motions on December 15, 2020 and granted both in part.   He ordered a forensic examination of the defendants' COBOL computer to be conducted by plaintiff's expert R. Stott Matthews of Spectrum Computer Forensics and Risk Management, LLC and permitted Best Value to renotice a Rule 30(b)(6) deposition of Quality Collision.   He denied Best Value's request for monetary sanctions, but he ordered that the cost of the forensic examination be borne equally by both parties.

### C.  First Court-Ordered Forensic Exam

Mr. Matthews visited Quality Collision's headquarters in Warren, Michigan on March 24, 2020 to create a forensic image of the Dell computer that operated Quality Collision's COBOL system.   Although Mr. Matthews located a business data application called AGQ, he found little information on the hard drive containing customer names or addresses, parts sold, prices, part numbers, or dates.   The only potentially-responsive data Mr. Matthews found on the computer

was: (1) a file containing 31 rows of data with the header "Quality Collison Parts Receivables for month of May 2018"; (2) a file named "applied" containing 86,287 rows of data and columns for dates, dollar amounts, and client names beginning in June 2017; (3) a file named "Invoices" containing client data, dates, and persons who may work at Quality Collision, but without any values correlating to dollar amounts or parts sold; and (4) an Excel file named "1901NEWA.XLSX" containing more than 194,000 rows of data listing parts and prices. Mr. Matthews did not identify any data for 2015 or 2016 or for the first half of 2017. Nor could he determine with certainty where the raw data that was "called" by the AGQ application resides. Mr. Matthews concluded that the quantity and form of data identified "is consistent with the output/reporting functions of the AGQ application, as opposed to raw data, such as that used to generate individual invoices." Spectrum Rep., ECF No. 127, PageID.4758.

Mr. Matthews subsequently explained in a recorded interview that he believed that the AGQ application was accessing raw invoice, inventory, and general ledger data from another source to generate the reports he located on the COBOL computer. Matthews Aug. 2021 Interview Tr., ECF No. 132-2, PageID.4933-34, 4941. Although he found certain reports generated by the AGQ application, he did not find any standalone source tables on the computer, even though Quality Collision necessarily must have client-specific data in order to generate invoices and operate its business. He also did not find any evidence of deleted files or of the 2018-2019 Excel spreadsheet that Quality Collision already had produced, which he did not locate on the computer. Mr. Matthews surmised that the AGQ application could not generate invoices or Excel-based outputs on its own, and that Quality Collision must be using other devices to perform those functions. To find the source of the raw data used to generate such outputs, Mr. Matthews

indicated that he would need to log into Quality Collision's computer with privileges and work with whomever generates Quality Collision's reports.

After discussing the forensic examination with Mr. Matthews, plaintiff's counsel wrote a letter to Quality Collision requesting further cooperation in efforts to produce Quality Collision's financial information. Quality Collision's counsel responded combatively, urging Best Value "to file a motion to compel, or for sanctions" if it feels "so strongly about the existence of any wrongdoing"; defense counsel declared that any discovery issues are "your problem — not ours!" Jul. 7 Letter to Best Value, ECF No. 133-6, PageID.5021. He rejected flatly the prospect of further cooperation, writing that

> I feel the necessity at this juncture to make it very clear as of this moment that my client would sooner be taken into custody for contempt of Court, than to allow ANY further and redundant examination of its/their business system. Your first and only bite at the apple was in-itself a step too far as you had yet to substantiate the necessity of such an invasive discovery tool given that **literally ALL of the sales data you were seeking was already turned over to you.** It was my client's previous attorney, my predecessor-counsel who was an idiot enough not to properly and timely object to your baseless fishing expedition.

*Id.* at PageID.5023. Defense counsel stored the letter under the sarcastic filename "Fancy Letter to Max Gross," plaintiff's counsel. 2d Mot. for Sanctions, ECF No. 157, PageID.5442.

### D. Fifth Discovery Motion

On September 7, 2021, Best Value again moved the Court to compel Quality Collision and Hermez to cooperate with discovery and produce the financial documents that were the subject of Judge Whalen's prior orders: the monthly customer sales information for 2015-2017, which the defendants had yet to produce in any format, and the monthly 2018-2019 customer sales data, which the defendants had only produced on an annualized basis. Best Value argued that Mr. Matthews's examination of Quality Collision's COBOL computer indicated that Quality Collision stores its raw invoice data elsewhere, and Quality Collision thus should be compelled to identify

the devices on which customer sales data is stored and provide any information necessary to access it.  It also asked the Court to order Quality Collision and Hermez to bear all costs and attorney's fees incurred in conducting further discovery.

The Court referred the motion to Magistrate Judge Elizabeth A. Stafford, who was assigned to the case after Judge Whalen retired.  Judge Stafford held a hearing on December 2, 2021, during which she expressed frustration regarding the lack of straight answers regarding the existence and whereabouts of Quality Collision's 2015-2017 customer sales information.  Dec. 2021 Hearing Tr., ECF No. 145, PageID.5302-04.  Defense counsel maintained that all financial information is stored on the COBOL computer that the forensic expert examined and that neither he nor his client have any idea where else the information would be.  He suggested that Quality Collision does not keep paper records or other sales data and in fact uses the examined computer to generate invoices, despite the forensic expert's opinion to the contrary.  Plaintiff's counsel pointed out the inadequacy of the produced 2015-2017 sales data, reiterated the reasons that the sales data was relevant, and explained why he needed the pre-2018 data.  Judge Stafford directed the parties to meet and confer regarding the 2015-2017 records; permitted Best Value to serve new, narrowly-tailored interrogatories regarding the records' whereabouts; and ordered defense counsel to undertake a reasonable search for the records and certify his efforts under Federal Rule of Civil Procedure 26(g).  She stated that this "narrow inquiry" should "not forestall any remedies you [Best Value] want to pursue if you feel like there has been spoilation or things along those lines."  *Id.* at PageID.5326,

Best Value served the interrogatories on December 20, 2021, asking for (1) the location of all customer sales information from 2015-2017; (2) the location of all customer sales information from 2018-2019, including the data already produced; and (3) the identities of all persons who

have access to said data.   On January 3, 2022, Quality Collision and Hermez served sworn

responses stating that

> All of our company sales data, including customer information, sales invoices, all sales transactions, and other similar data which is generated, used-by, or otherwise stored is done so in the one computer which was subject to the forensic examination.   Other computers, such as our POS units connect to this main computer.   This computer has never been wiped clean, re-formatted, or otherwise erased.   To our knowledge, the computer has never been backed-up.

Defs.' Resp. to 4th Interrog., ECF No. 157-9, PageID.5527-28.   They also stated that the "main

computer"

> operates as a server while all of the other computers in the company connect to it through our network.   As for output of spread sheets, the computer program we use for our sales and invoices can run a query to generate certain top-level reports for tax filings similar to those provided in this case.

*Id.* at PageID.5527.   Finally, they asserted that their "present and past officers, employees,

independent contractors, bookkeepers, accountants . . . , IT professionals . . . , and attorneys" could

have accessed the computer, although their accountants typically "do not access it regularly" but

instead "are provided with reports which are generated from the sales program which is hosted on

that computer."   *Id.* at PageID.5527-28.   Defense counsel certified that he had completed a

reasonably inquiry, including ensuring that all electronic data sources and physical files in the

defendants' possession carefully were searched, and believed that the defendants' answers to the

interrogatories were complete and correct.   Rule 26(g) Cert., ECF No. 157-10, PageID.5531.

Judge Stafford held a second hearing on Best Value's motion on January 13, 2022.   Noting

that Quality Collision and Hermez had now sworn under the penalty of perjury that any and all

sales data is stored on the COBOL computer, she explained that she did not believe the location

of the data could be resolved on a motion to compel further discovery.   However, she allowed that

other remedies might be available, including potentially through "a motion for violations of

discovery orders under Rule 37" or "a motion alleging spoliation." *Id.* at PageID.5390.  She suggested that it would be helpful for Best Value to interview the forensic expert to determine whether it can be true both that the defendants were honest that their invoices were stored on the COBOL computer and that the expert could not find them there.  *Id.* at PageID.5395.  Judge Stafford issued an order denying Best Value's fourth motion to compel without prejudice, but she granted leave for plaintiff's counsel to interview the forensic expert again.  Order Denying 4th Mot. to Compel, ECF No. 147, PageID.5351-52.  Her order stated that, "[i]f plaintiff can prove that defendants violated the rules of discovery or orders, it may move for sanctions." *Ibid.*

Plaintiff's counsel conducted the second interview of forensic expert Matthews on April 15, 2022.  Mr. Matthews confirmed his opinion that it is highly unlikely that customers sales data for either 2015-2017 or 2018-2019 is stored on Quality Collision's COBOL computer, stating that if the raw invoice data "was stored on that computer I believe I would have found more evidence to support the defendant's position that everything is run from this machine."  Matthews Apr. 2022 Interview Tr., ECF No. 157-11, PageID.5538-39.  "[I]f this is truly the sole locus of all invoicing activity," Mr. Matthews continued, "I'm at a loss for how . . . it performs that function on a monthly basis to send out invoices."  *Id.* at PageID.5537.  He further clarified that he has "no idea how" the computer "could possibly be doing" what the defendants say given what he knows about computers.  *Id.* at PageID.5543.  However, he also noted that, due to the narrow parameters of Judge Whalen's order appointing him, he did not perform a traditional forensic examination analyzing file and folder access history and deletions.  *Id.* at PageID.5549-50.

E.  Motion for Sanctions and Second Forensic Examination

On May 13, 2022, Best Value filed another motion for sanctions — its sixth — against Quality Collision and Hermez for "abusing the discovery process and repeatedly disobeying the Court's orders."  2d Mot. for Sanctions, ECF No. 157, PageID.5425.  It asked the Court to enter

default judgment or, alternatively, an order (1) directing that the damages opinions of its financial expert be taken as established at trial, and (2) prohibiting Quality Collision and Hermez from opposing or introducing any evidence on customer sales and damages. *Ibid.*

The Court again referred the motion to Judge Stafford, who held an evidentiary hearing at which Best Value presented testimony from its financial expert, Jeffery T. Bagalis; Matthews, the forensic expert; and Hermez.  Bagalis testified that, from the limited 2018-2019 information provided, he observed a spike in Quality Collision's 2019 sales and a corresponding decrease in Best Value's sales to the same customers.  His analysis was limited, however, by Quality Collision's failure to produce monthly sales data, or any data prior to 2018, which Bagalis needs to establish the parties' respective, customer-specific sales before Ojeda allegedly began colluding with Quality Collision and Hermez in 2017.  Ev. Hearing Tr., ECF No. 166, PageID.5631-34. Hermez again was combative and unprepared, testifying that, although he owns 100% of Quality Collision, he is "not full-time," "not in that business," does not "have a lot of information," and is "not running the show . . . at all."  *Id.* at PageID.5667-68, 5672.  Nevertheless, he stated that Quality Collision manages and stores on its COBOL computer all information used to make sales, including "all customer sales information" dating back at least to 2017, explaining that "everything should be in that one computer" and that it never had been wiped or reformatted.  *Id.* at PageID.5687-704.  Upon further questioning, however, Hermez denied ever touching or using the computer and professed complete ignorance as to the results of the forensic examination, testifying that it is "not my business" to know how the computer works.  *Id.* at PageID.5695-706.  Notably, he averred that he did not personally inspect the COBOL computer before signing off on his and Quality Collision's responses to Best Value's third set of interrogatories in January 2022.  *Id.* at

PageID.5719-20.  Hermez further admitted that he never directed anyone to look at the computer to see if the 2015-2017 data was on it and was not aware that anyone had done so.  *Ibid.*

After the hearing, Judge Stafford ordered Mr. Matthews to perform another forensic examination of Quality Collision's COBOL computer "to evaluate whether data has been deleted, overwritten, or otherwise tampered with and whether any data originated from another source." Order for Post-Hearing Br., ECF No. 165, PageID.5607-08.  She also ordered the parties to submit post-hearing briefs.  *Ibid*.

Mr. Matthews performed the second forensic examination using the same forensic image he created for the first examination.  Matthews Aug. 2022 Rep., ECF No. 168-27, PageID.5989. He found further support for his conclusion that the computer draws sales data from an external source.  First, Mr. Matthews determined that the application that manages Quality's sales data is run on an external server and not on the computer itself.  When Mr. Matthews tried to run commands using the AGQ application, the computer tried to access a "Z" drive to which Mr. Matthews did not have access.  He surmised that this "Z" drive plays a "critical role" in accessing network resources but can only be reached by computers on Quality's network.  Second, Mr. Matthews found that the computer repeatedly had been used to access electronic files stored on USB devices.  The names of the files — which include dates and terms like "price quote," "parts prices," "stock orders," and "price update daily" — suggest that they contain potentially responsive sales data, while the artifacts Mr. Matthews discovered on the computer indicate that at least three USB-storage devices were used "in a fairly contemporaneous manner."  *Id.* at PageID.5996-97. He attached to his report a 21-page list of files the computer had accessed but noted that the USB drives likely contained many more files for which no artifacts were created.  Finally, Mr. Matthews discovered that someone had reinstalled the Windows operating system on the computer on July

7, 2017.  The reinstallation date is notable because the AGQ application was not installed on the computer until October 2017 — meaning that, if Quality Collision used the application before that date, it did so on another computer.  Mr. Matthews found no artifacts on the computer consistent with the use of the AGQ application before July 7, 2017, nor any evidence that the application was used between July and October of that year.  Moreover, essentially all of the data present on the computer was overwritten on July 7, 2017 when Windows OS was reinstalled.

### F.  Report and Recommendation

After considering Mr. Matthews's second report and the parties' post-hearing briefs, Judge Stafford issued a report recommending that Best Value's motion for sanctions be granted and default judgment be entered against Quality Collision and Hermez.  Judge Stafford found that by producing only their "annual sales summary for 2018 and 2019," the defendants had "stubbornly and deceitfully" violated court orders to produce 2015-2019 customer sales data in the format in which it is ordinarily kept.  She concluded that the record suggests that responsive data exists on devices other than Quality's COBOL computer; that the defendants intentionally have obstructed efforts to obtain said data, including by responding to interrogatories without taking even the most basic steps to verify that their responses were accurate, and cavalierly dismissing the many other opportunities the Court has provided them to comply; and that defendants' argument that they lack the sophistication to understand their own computer system is an incredible, "brazen and transparent" attempt to escape responsibility.  Judge Stafford concluded that the defendants had acted in willful bad faith.

Judge Stafford also found that the other factors necessary to enter default judgment had been satisfied.  She determined that Quality's failure to produce sales or financial data from 2015-2017 or its daily or monthly data for 2018-2019 hindered Best Value's ability to evaluate or prove causation and damages.  She found that her comments at the January 13, 2022 motion hearing and

subsequent order provided sufficient warning to the defendants that a default judgment could be entered against them. And she found that because the Court already had imposed lesser sanctions on the defendants and trial is impending, default judgment is the only remaining sanction that would protect the integrity of pre-trial procedures at this late stage of the case.

## II. Discussion

Tracking the factors generally considered when case-terminating sanctions are imposed for discovery violations — willfulness, prejudice, prior warnings, and consideration of lesser sanctions, *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) — defendants Quality Collision and Hermez filed four objections to the report and recommendation.

When a party files timely objections to a report and recommendation, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

This review is not plenary, however. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the Court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474

- 16 -

F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

"A district court may sanction parties who fail to comply with discovery orders in a variety of ways, including dismissal of their lawsuit or entry of default judgment against them." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (citing Fed. R. Civ. P. 37(b)(2)).  Nevertheless, entry of a default judgment is a "harsh sanction" that the Court should order only in "extreme situations showing a clear record of contumacious conduct." *Schafer*, 529 F.3d at 736 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).  The four factors courts consider are:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Id.* at 737 (quoting *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999)).  Although no one factor is dispositive, a case-terminating sanction is appropriate where there is a clear record of delay, perverse resistance to authority, or stubbornly disobedient conduct.  *Ibid.*; *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

## A.   First Objection

The defendants argue that they have not failed to comply with the Court's discovery orders, let alone done so in bad faith.  They argue that Judge Stafford erred by determining that they produced no business records except Quality Collision's annual sales summary for 2018-2019, because, as plaintiff's counsel has acknowledged, they have in fact produced handwritten documents that included monthly aggregate revenue totals for that period.  They also object to Judge Stafford's description of the 2018-2019 records as an "annual sales summary," noting that

they produced more than 344,000 rows of responsive information sufficient to permit Best Value

to identify whether Quality began selling to any of Best Value's customers prior to Ojeda's start

date.  The defendants insist that if additional responsive data existed, it would be located on their

COBOL computer.  That data may have been inadvertently lost when Windows was reinstalled on

the computer in 2017 is not evidence of bad faith, they maintain, especially given their lack of

technical acumen and that the reinstallation occurred long before Ojeda joined Quality Collision.

They contend that the reinstallation must explain why the 2015-2017 data has not been located,

and that default judgment is too drastic a remedy for accidental data loss.

The first factor — bad faith — is "the most important."  *KCI USA, Inc. v. Healthcare*

*Essentials, Inc*., 801 F. App'x 928, 934 (6th Cir. 2020); *Ndabishuriye v. Albert Schweitzer Soc'y,*

*USA, Inc*., 136 F. App'x 795, 800 (6th Cir. 2005).  Bad faith is demonstrated when a party displays

"either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct

on those proceedings."  *Schafer*, 529 F.3d at 737 (quoting *Wu*, 420 F.3d at 643).

As a general matter, the Sixth Circuit is reluctant to find willful bad faith warranting a

default judgment, typically finding it appropriate to impose case-terminating sanctions only where

a party has failed to respond to discovery requests or acted in contempt of a court order compelling

cooperation with such requests.  *Mulbah v. Detroit Bd. of Educ*., 261 F.3d 586, 592 (6th Cir. 2001).

Default judgments are not warranted, for example, where a party merely has delayed in responding

to deadlines and discovery requests, *id.* at 591, or where "no one is clearly at fault except for the

party's attorney," *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co*., 842 F.2d 150, 155 (6th Cir.

1988); *see also Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th

Cir. 1986) (cautioning that default judgment should not be used "as a vehicle for disciplining

attorneys").

- 18 -

But bad faith has been found where a party failed to turn over all of his electronic devices, failed to produce records responsive to court orders, and executed a false affidavit attesting that he had "fully and truthfully" answered all discovery requests. *KCI USA*, 801 F. App'x at 935. Bad faith also was found where, despite multiple orders granting motions to compel, the defendants refused to produce any responsive documents detailing their financial condition, maintained that it was adequate merely to insist that they had no assets, and claimed to have lost a responsive insurance policy without offering any explanation for why they were unable to secure another copy. *Ndabishuriye*, 136 F. App'x at 801.

The facts disclosed at the evidentiary hearing place this case within the heartland of disputes where courts have found evidence of willful bad faith warranting case-terminating sanctions. For more than two years, the defendants have defied court orders and failed to produce any responsive customer sales data from 2015-2017, or customer sales data by month for 2018-2019. Although the Court now has considered no less than six motions seeking to compel the defendants to produce this information, still it remains entirely unclear why they have not done so. Worse, they swore under penalty of perjury to false answers to interrogatories and have not taken any apparent steps to locate responsive data, despite certifying otherwise to the Court.

And the defendants' excuses for their incomplete production amount to no more than evolving explanations, which are unpersuasive. After first promising to produce monthly data from 2015-2019, they later insisted that they do not keep responsive records, swore that any responsive records would be found on their COBOL computer, then, at the eleventh hour, explained that any data that did exist must have been inadvertently deleted when someone reinstalled the Windows operating system on the computer in July 2017. Not all of these

explanations, of course, can be true.  Nor, it appears, can the most recent explanation offered in their objections to Judge Stafford's report — the inadvertent deletion theory — be true at all.

The defendants point to the second forensic report as evidence that they cannot produce the data the plaintiff demands, seizing upon Mr. Matthews' conclusion that the COBOL computer effectively was wiped clean in July 2017.  Significantly, however, Mr. Matthews also concluded that the COBOL computer is not used to store data or to perform any of the other functions the defendants say it does.  In embracing the former conclusion, the defendants ignore the latter entirely.  They do not explain or even address Mr. Matthews's findings that the COBOL computer calls data from elsewhere, regularly accesses data from external USB drives, and as a general matter is not used to generate invoices.  They also do not explain why they have not been able to provide any customer sales data from the second half of 2017, after the Windows reinstallation; why the 2018-2019 spreadsheet they did provide was not found on the computer; or why they did not reinstall the AGQ application on the computer until October 2017.  They do not even attempt to justify their prior sworn statements that all data is stored on the COBOL computer (they disavowed maintaining any paper records) and that the computer was never wiped or reformatted. And even more problematically, they appear to have taken no steps whatsoever to examine the COBOL computer themselves, despite defense counsel certifying to the Court that they had made a reasonable inquiry to locate responsive data, including carefully reviewing all electronic data sources in the defendants' possession.

Judge Whalen imposed the sanction of a forensic examination of the COBOL computer, with shared costs, in December 2020, almost two years ago.  Since then, the defendants have proceeded as if the onus for finding responsive customer sales data is on the plaintiff.  That is wrong.  "Federal Rule of Civil Procedure 26 generally enables a party to 'obtain discovery

regarding any nonprivileged matter that is relevant to [the] party's claim or defense,' Fed. R. Civ. P 26(b)(1), and to have that discovery material updated and corrected *by the opposing party* throughout the course of the proceedings." *Info-Hold, Inc. v. Sound Merch., Inc*., 538 F.3d 448, 457 (6th Cir. 2008) (emphasis added).  If responsive data exist, the defendants have an obligation to produce it, and if it does not, they have had ample opportunities to explain why.  Yet they have not done so or rebutted the evidence that responsive data exist that has not yet been produced. That they turned over a handful of handwritten notes from 2015-2017 does not negate their obligation to produce other responsive records from that period.

The defendants say that they are not adept at using computers.  But that too is no excuse for their continued pattern of obfuscation.  The defendants have been represented competently by four different attorneys and operate a business that routinely produces invoices and other records in order to make sales to customers.  *See, e.g.*, *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (holding that even *pro se* litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended discovery deadlines).  And they appear consistently to use USB drives and other external resources to create or access such records.  Nevertheless, they have not made any good faith attempt to produce any data from those resources or even to examine the one computer they say they know how to use.

The defendants cite *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11- 13335, 2014 WL 7366103, at *6 (E.D. Mich. Dec. 24, 2014), for the proposition that default judgment is inappropriate where there is a "valid explanation for a party's inability to produce electronic data."  However, *Barrette* is easily distinguished.  There, the parties agreed that the defendant's cell phones and computer had been destroyed, but disputed whether the destruction was inadvertent, with the defendant averring, for example, that she accidentally put her cell phone

through the washing machine before she had any duty to preserve evidence.  *Barrette*, 2014 WL 7366103, at *5-6.  The court declined to rule on the motion for sanctions before trial.  Here, the defendants insisted for a year and a half that no data on the COBOL computer ever had been destroyed, before arguing precisely the opposite in response to the present sanctions motion.  Moreover, whether or not the COBOL computer was reformatted in July 2017 has no bearing on the defendants' ability to produce monthly customer sales data after that date.  Again, the defendants have not produced any customer-specific data from the second half of 2017, nor any 2018-2019 data in a monthly format.  And the same forensic report the defendants insist explains their inability to produce electronic data concludes that the defendants do not store responsive data on the COBOL computer itself.

Judge Stafford correctly concluded that the defendants willfully have delayed and obstructed discovery in reckless disregard of the orders of the Court.  The first objection will be overruled.

## B.  Second Objection

Next, the defendants object to Judge Stafford's finding that their failure to produce customer sales data for 2015-2017 prejudiced Best Value.  They contend that Best Value adequately can determine whether Quality Collision sold parts to Best Value's customers by comparing 2018 and 2019 sales data, because Ojeda did not begin working for Quality Collision until January 2019.  They also argue that the plaintiff's financial expert can use the 2015-2017 aggregate summaries they did provide as part of his damages analysis.

However, a party is prejudiced by wasting "time, money, and effort" in the pursuit of cooperation that the opposing party already was "legally obligated to provide."  *Schafer*, 529 F.3d at 737 (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)).  Best Value

suffered prejudice because it "never received information critical to [its] case" and had to "waste significant time and money dealing with the defendants' abuses." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). Best Value never received any customer-level data for 2015-2017, limiting its ability to prove both liability and damages by comparing the parties' sales before and after Ojeda allegedly began colluding with the defendants in 2017. It also never received 2018-2019 customer sales data in a monthly format, inhibiting its ability to make a fulsome damages assessment for those years.

The defendants have offered no serious argument for how Best Value can establish pre-2019 damages using only brief, handwritten notes that do not include any customer names or sales data. Nor have they adequately explained why they have not produced monthly data from 2018-2019. "[I]t is in cases like this one, where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction." *Ibid.*; *see also KCI USA*, 801 F. App'x at 935 (finding prejudice where the defendant deprived the plaintiff "of its right to discoverable evidence which it could have used to properly litigate this case before the Court"); *Ndabishuriye*, 136 F. App'x at 801 ("Absent information about the finances and organization of the Society, they were hampered in preparing their case on the merits and in pursing damages."); *Reg'l Refuse*, 842 F.2d at 155 ("The defendants know little more now than they did when they began about how the plaintiffs intended to prove their case, and the prejudice caused by [the plaintiffs'] conduct is therefore clear.").

The defendants' obstructive conduct has forced Best Value to file multiple motions and engage an expert to sus out the economic data that plainly is discoverable. "Courts have previously found prejudice sufficient to uphold default judgments when the obstructing party had wasted far less of the court's and the opposing litigant's time." *Mack*, 270 F. App'x at 377 (collecting cases);

- 23 -

*see also Ndabishuriye*, 136 F. App'x at 801 (finding prejudice where the defendant should have produced discovery nearly a year before the plaintiff filed its motion for default judgment).

The magistrate judge properly found that the defendants' discovery misconduct prejudiced the plaintiff.  The second objection will be overruled.

### C.  Third Objection

The defendants contend that they were never warned that their inability to produce customer-specific sales data could result in a default judgment.  They argue that the only warning they did receive was Judge Stafford's comment at the January 13, 2022 hearing that Best Value "perhaps" has grounds for "a motion for violations of discovery orders under Rule 37," and her subsequent order stating that the plaintiff could move for sanctions if it could prove such violations. Neither statement, they argue, rises to the level of specific warrant necessary to justify default judgment.

But prior notice of the prospect of an ultimate sanction is "not indispensable" to a finding that a default judgment is the appropriate remedy.  *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010).  Notice may be found in the filing of a prior motion, *Reyes*, 307 F.3d at 458, and its importance "fades" where there is a showing of contumacious conduct, *Knoll*, 176 F.3d at 366 (quoting *Harmon*, 110 F.3d at 367).  "There is no magic-words prerequisite to dismissal under Rule 37."  *Universal Health Grp. v. Allstate Ins. Co*., 703 F.3d 953, 956 (6th Cir. 2013).

That aside, the defendants had ample warning of the consequences of their failure to cooperate with discovery.  The Court's orders granting the plaintiff's first four motions to compel in whole or in part were sufficient to put them on notice, as was the Court's order imposing the sanction of the forensic examination.  *Abbe*, 916 F.2d at 1079 ("The court's delay in ruling on the banks' first motion for sanctions, followed by its order compelling the defendants to comply with

discovery, was sufficient to put them on notice of the consequences of their failure to cooperate."); *Universal Health*, 703 F.3d at 956 (finding that a court order imposing "an intermediate sanction short of dismissal" put the opposing party "on clear notice that continued abuses could cause" dismissal). And Judge Stafford's warnings during both hearings on Best Value's fourth motion to compel provided ample notice. Judge Stafford made a point of informing the parties that Best Value could pursue remedies for "spoilation or things along those lines," Dec. 2021 Hearing Tr., ECF No. 145, PageID.5326, and may "have the grounds for a motion for violations of discovery orders under Rule 37," Jan. 2022 Hearing Tr., ECF No. 149, PageID.5390. *See KCI USA*, 801 F. App'x at 928 (finding sufficient warning where a scheduling order issued earlier "that month" indicated the court could "impose any sanction it considers appropriate, including . . . entering default judgment"); *Mack*, 270 F. App'x at 377 (finding sufficient warning where the court warned during a hearing that it could issue discovery sanctions including "trying matters on damages only"). Judge Stafford further memorialized her warning in her order denying Best Value's motion without prejudice and ordering the second forensic examination.

The defendants are correct that the Sixth Circuit sometimes requires specific warnings that default judgment may issue. But that is because "[t]he question of adequate notice is . . . intertwined with the issue of alternative sanctions." *Mulbah*, 261 F.3d at 593. As discussed below, the Court already has considered and imposed lesser sanctions in this case, and it was long afterward that Judge Stafford warned the defendants that further discovery sanctions could issue.

Having incurred those lesser sanctions and having litigated four motions to compel, the defendants cannot now claim surprise at the consequence of a default judgment. The third objection will be overruled.

D.  Fourth Objection

Finally, the defendants object to Judge Stafford's conclusion that Judge Whalen's remedial orders (the forensic examination and order to share costs) amounted to lesser sanctions.  They contend that Judge Whalen actually denied the bulk of the relief Best Value requested.  They also argue that it is not too late to impose lesser sanctions, noting that the Court instead could preclude them from presenting any testimony or evidence at trial suggesting that Quality made sales to any of Best Value's customers prior to 2018.

Courts are not required to "incant a litany of the available lesser sanctions" or even to articulate what alternatives they considered.  *Harmon*, 110 F.3d at 369.  The main focus is whether any "alternative sanction would protect the integrity of pre-trial procedures," *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) (citing *J. F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318 (7th Cir. 1976)), or would be "superfluous" in light of the circumstances of the case, *Knoll*, 176 F.3d at 366; *see also Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (finding dismissal appropriate given the court's "measured response" to a prior motion to dismiss).

Judge Whalen's "measured response to the first motion" for sanctions, imposing "an intermediate sanction short of dismissal," plainly satisfies the fourth factor.  *Ibid*.  Judge Whalen imposed the lesser sanction of compelling the defendants to submit to the first examination of their COBOL computer and share the cost.  *See* Order Granting 3d Mot. to Compel in Part, ECF No. 113, PageID.4351.  The defendants say that this was no "sanction."  But Best Value explicitly moved for the Court to "enter an order entering sanctions against and compelling Defendants Quality Collision. . . and . . . Hermez . . . to provide and pay for a forensic exam of Quality Collision's computer system."  1st Mot. for Sanctions, ECF No. 90, PageID.3299.  The defendants

opposed the motion, arguing that the Court should not "*impose sanctions* on Defendants by . . . ordering Defendants to provide COBOL system to Plaintiff's expert for forensic examination for the 2015-2017 Customer Sales Information and 2018-2019 monthly sales information."  Resp. to 1st Mot. for Sanctions, ECF No. 103, PageID.3879 (emphasis added).  And Judge Whalen granted the motion "in part . . . to the extent that the Court orders a forensic examination of the Defendants' COBOL computer program and files."  Order Granting 1st Mot. for Sanctions in Part, ECF No. 113, PageID.4351.

That Judge Whalen did not grant the plaintiff's other requested relief does not mean that the examination was not a "sanction."  The defendants themselves have continued vigorously to protest the examination as unduly invasive.  *See, e.g.*, Jul. 7 Letter to Best Value, ECF No. 133-6, PageID.5023 (indicating that the defendants "would sooner be taken into custody for contempt of Court, than to allow ANY further and redundant examination of its/their business system" and disputing in the first instance "the necessity of such an invasive discovery tool").  Moreover, the defendants' persistence in refusing to produce 2015-2017 customer sales data — and their defiance of no less than four orders compelling discovery over the course of sixteen months — indicate that the forensic examination "evidently" was not sanction enough.  *KCI USA*, 801 F. App'x at 936; *see also Abbe*, 916 F.2d at 1079 (finding that the failure to comply with one order to compel adequate to "demonstrate[] the futility of any lesser sanctions.").

Computer expert Matthews clearly explained why the gaps and dead ends in his search for data meant that the information the plaintiff sought was located somewhere else.  And he reasoned that the defendants could not operate their business — selling parts, invoicing customers, tracking inventory — without accessing that data in the ordinary course of their operations.  He provided a roadmap for the defendants to follow that would lead to compliance with the discovery orders.

Yet the obfuscation persisted.  The record admits of no possibility that defendants "would have responded to lesser sanctions."  *Mack*, 270 F. App'x at 378 (finding that 14 months' obstruction indicated that a lesser sanction than default judgment would be ineffectual).

The magistrate judge concluded correctly that a default judgment is the only appropriate discovery sanction that remains.  The fourth objection will be overruled.

### III.  Conclusion

The magistrate judge correctly applied the governing law to the accurately determined facts of the case as presented in the motion papers.  The defendants' repeated failure to comply with discover orders warrants the entry of a default judgment on liability.  The defendants' objections to the report and recommendation lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 176) is **ADOPTED**.

It is further **ORDERED** that the defendant's objections (ECF No. 180) are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for a default judgment on liability against defendants Quality Collison Parts, Inc., and Nathir Hermez (ECF No. 157) is **GRANTED**.

It is further **ORDERED** that the parties shall appear for trial on the issue of damages against defendants Quality Collison Parts, Inc., and Nathir Hermez and on the issues of liability and damages against defendant Jose Ojeda on **May 16, 2023 at 8:30 a.m.**  The parties shall appear for a final pretrial conference on **May 4, 2023** at **11:00 a.m.**  They must present their proposed joint final pretrial order to chambers **on or before April 20, 2023.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 28, 2023